**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL ALEXANDRE PINKSTON,  | Case No. CV 15-00270-PA (KK) |
| Plaintiff, | |
| v. | ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| FACILITY CAPTAIN SEAN MOORE, et al., | |
| Defendants. | |

Plaintiff Michael Alexandre Pinkston ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis*, filed a First Amended Complaint ("FAC") pursuant to 42 U.S.C. § 1983 ("Section 1983"), against six defendants employed as Correctional Officers by the California Department of Corrections and Rehabilitation. The Court has now screened the FAC pursuant to 28 U.S.C. § 1915(e)(2). Based upon the reasons set forth below, the Court dismisses the FAC with leave to amend.

**I.**

**PLAINTIFF'S ALLEGATIONS**

The FAC names six defendants: (1) Facility Captain Sean

1

Moore, (2) Facility Captain E. Jordan, (3) Lieutenant E. Gaffney, (4) Lieutenant G. Marshall, (5) Sergeant N. Marquez, and (6) Sergeant R. Franklin. FAC at 3-5. Plaintiff sues each of the six named defendants in their individual capacity. Id.

Plaintiff alleges as follows: Plaintiff "was an Executive Body Officer of the Men's Advisory Council[1] (hereinafter, 'MAC') with the rank of Vice-Chairman (a paid assignment)." Id. at 3. Plaintiff was placed in administrative segregation in retaliation for "exercising his First Amendment speech rights while acting in his capacity as a 'MAC' Executive." Id. at 7. The "real reason" for his placement in administrative segregation was to remove him "from his position and job assignment as the B Facility 'MAC' Vice-Chairman, thus chilling and punishing [his] ability to exercise his speech rights." Id. Defendants intended to punish Plaintiff for a "MAC letter/memo he prepared" in December 2012 to inmate M. Turner "notifying him of the Council's decision" "against preparation and the submission of a recommendation to the lieutenant" regarding Turner's allegations of excessive force. Id. at 8. The letter "further advised Turner that he

---

[1] "California Code of Regulations title 15, section 3230 provides that each 'warden shall establish an inmate advisory council which is representative of that facility's inmate ethnic group' to operate under a constitution approved by the warden. Most wardens have created a MAC whose members are elected by the inmate general population. MAC members 'serve to advise and communicate with the warden and other staff those matters of common interest and concern to the inmate general population.' Id. at § 3230(a)(1). MACs therefore act as both as an advocate for inmate interests and as a sort of prison administration/inmate liaison." Williamsun v. Marshall, No. C 94-0444 BAC, 1994 WL 377774, at *2 (N.D. Cal. July 5, 1994) (citing California Men's Colony v. Rowland, 939 F.2d 854, 855 (9th Cir. 1991), rev'd on other grounds, 113 S. Ct. 716 (1993)).

could avail himself of the departmental appeal process, and if he chose, he could attach plaintiff's MAC memo/letter to any appeal concerning the 11-28-12 incident." Id.

"On January 10, 2013, defendant Marquez authored a CDC-128B chrono asserting that information had been received which posed an immediate threat to plaintiff's physical safety." Id. at 9. Defendant Gaffney then prepared an administrative segregation notice relying on the chrono prepared by defendant Marquez. Id. Later that day, while Plaintiff was in a holding cell in the Program Office, defendant Moore advised Plaintiff "he could not give legal advice as a MAC Rep." Id. On January 11, 2013, defendant Moore conducted an Administrative Review and retained Plaintiff in administrative segregation "pending classification committee ('ICC') review and a facility security investigation." Id.

On January 17, 2013, Plaintiff appeared before the ICC panel for a hearing on the January 10, 2013 administrative segregation order. Id. at 10. Plaintiff learned the reason for his placement in administrative segregation was that defendant Moore believed Plaintiff was giving legal advice and was using his MAC position to critique excessive use of force. Id. at 11. The ICC panel determined the letter/memo was "not illegal, and decided to release plaintiff" from administrative segregation. Id.

Defendant Jordan signed a chrono dated January 17, 2013 noting "that 'ICC' had released plaintiff to B Facility." Id. However, Plaintiff's release back to B Facility was blocked because defendants Moore and Marshall "caused/facilitated and effectuated" a transfer of a well-documented enemy of Plaintiff

to B Facility. Id. Defendant Franklin informed Plaintiff of the enemy's transfer. Id. at 12.

On January 18, 2013, Sergeant Salcedo asked Plaintiff if he would agree to go to "D" yard, otherwise Plaintiff "would have to go to committee again." Id. at 13. On January 19, 2013, defendant Franklin informed Plaintiff that he and the enemy in B Facility could sign compatibility chronos, or Plaintiff could be released to D Facility after completing the necessary paperwork. Id. at 15.

Defendants Moore and Marshall both knew there was a second documented enemy remaining in D Facility. Id. at 16. Therefore, when Plaintiff was "seen by the D Facility UCC on March 27, 2015" he was placed in administrative segregation "because of the enemy status." Id. at 16-17.

Plaintiff's First Amendment cause of action alleges defendants Moore, Marquez and Gaffney were responsible for the retaliation against him. Id. at 19.

Plaintiff's Fourteenth Amendment Due Process and Equal Protection cause of action alleges (a) defendants Moore, Marquez and Gaffney discriminated against Plaintiff through use of fabricated allegations to retain Plaintiff in administrative segregation, (b) defendants "Moore and Marquez[2] abused their authority" by blocking Plaintiff's transfer back to B Facility, (c) defendant Jordan refused to enforce Plaintiff's return to B Facility and falsified the January 17, 2013 chrono, and (d)

---

[2] It appears from the facts alleged previously that Plaintiff intended to name Marshall in this cause of action rather than Marquez.

defendant Franklin, knowing Plaintiff had been released by the January 17, 2013 ICC to B Facility, acted upon a fabricated document to transfer Plaintiff to D Facility. Id. at 19-20.

Plaintiff's third cause of action for Conspiracy in violation of 42 U.S.C. 1985(2) alleges "defendants violated plaintiffs' 1st and 14th Amendment rights, by conspiring to violate said rights." Id. at 20.

Plaintiff seeks general damages, punitive damages, and a declaration that defendants' actions violated Plaintiff's rights under Section 1983. Id. at 21.

## II.

### STANDARD OF REVIEW

As Plaintiff is proceeding *in forma pauperis*, the Court must screen the FAC, and is required to dismiss the case at any time if it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B); see also Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

In determining whether a complaint fails to state a claim for purposes of screening under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court applies the same pleading standard from Rule 8 of the Federal Rules of Civil Procedure as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be dismissed

for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007) (citation and internal quotation marks omitted). In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it. Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation and internal quotation marks omitted).  Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and internal quotation marks omitted).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation and internal quotation marks omitted).  The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)(citations and internal quotation marks

omitted); Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008).

If the court finds a complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if the plaintiff is *pro se*. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). However, if, after careful consideration, it is clear a complaint cannot be cured by amendment, the court may dismiss without leave to amend. Cato, 70 F.3d at 1107-11; see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).

## III.

## DISCUSSION

**A.   Plaintiff Fails to State a First Amendment Retaliation Claim**

    **1.   Legal Standard**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a Section 1983 claim. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) the prisoner engaged in protected conduct; (2) an assertion that a state actor took some adverse action against an inmate; (3) the adverse action was "because of" the prisoner's protected conduct; (4) the adverse action chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

While prisoners possess certain First Amendment rights, a prison may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." See Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). "Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls." Jones v. N. Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125-26, 97 S. Ct. 2532, 2538, 53 L. Ed. 2d 629 (U.S. 1977). "[T]he inmate's 'status as a prisoner' and the operational realities of a prison dictate restrictions on the associational rights among inmates." Id.

**2. Analysis**

Here, Plaintiff alleges he was retaliated against because he wrote a letter for inmate Turner in his capacity as Vice-Chairman of the MAC. FAC at 7-11. Plaintiff alleges defendants intent was to chill his free speech rights by removing him from his paid position on MAC. Id. At 7.

First, Plaintiff has not alleged he was engaged in protected activity, because Plaintiff has no "special First Amendment right to provide legal assistance to fellow inmates." Shaw v. Murphy, 532 U.S. 223, 121 S. Ct. 1475, 149 L. Ed. 2d 420 (2001) ref. Turner, 482 U.S. at 78 (citations and quotations omitted); see also Manago v. Gonzalez, No. 1:11-CV-01269-SMS PC, 2012 WL 6628902, at *9 (E.D. Cal. Dec. 19, 2012) (Plaintiff's communications assisting his fellow inmates with their legal activities are not protected activity). Further, even if writing

8

the letter is protected activity, Plaintiff has failed to allege defendants' actions did not reasonably advance a legitimate correctional goal in preventing Plaintiff from using his MAC position to give legal advice. Moreover, defendants' actions did not chill Plaintiff's future First Amendment activities, because Plaintiff has no associational or other constitutional right to hold a paid position in prison. Williamsun, 1994 WL 377774, at *2 (holding "there is no constitutional right to a job in prison," including a MAC work assignment) (citing Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir.1982)); Lyon v. Farrier, 727 F.2d 766, 769 (8th Cir. 1984) ("Inmates have no constitutional entitlement to tenure in prison jobs.").

    Therefore, defendants' actions purporting to restrict Plaintiff's communications assisting his fellow inmates with their legal activities fails to state a First Amendment retaliation claim. Manago, 2012 WL 6628902, at *9.

**B. Plaintiff Fails to State a Due Process Claim**

    **1. Legal Standard**

    The Supreme Court has held prisoners have no constitutional right or interest independently protected by the Due Process Clause to be free from discipline or placement in administrative segregation. Hewitt v. Helms, 459 U.S. 460, 468, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983). Allegations by a prisoner that he was denied due process in connection with the decision to administratively segregate or discipline him present a constitutionally cognizable claim if: (1) prison officials are narrowly restricted by state statutes or regulations to impose the specific deprivation at play, and (2) the liberty in question

is one of "real substance." <u>Sandin v. Conner</u>, 515 U.S. 472, 477-487, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).

A liberty interest of "real substance" generally will be limited to freedom from (1) restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or (2) state action that "will inevitably affect the duration of [a] sentence." <u>Id.</u> at 484, 487. <u>See also</u> <u>Resnick v. Hayes</u>, 213 F.3d 443, 448-49 (9th Cir. 2000) (holding plaintiff failed to state a cognizable due process claim, because plaintiff's complaint failed to allege facts showing placement and retention in the SHU were not "'within the range of confinement to be normally expected' by prison inmates 'in relation to the ordinary incidents of prison life'"); <u>Fulton v. Lamarque</u>, No. C 03-4709 RMW (PR), 2008 WL 901860, at *6 (N.D. Cal. Mar. 31, 2008) (granting defendants' motion for summary judgment, finding plaintiff's placement in administrative segregation pending a disciplinary hearing was not a deprivation of "real substance").

**2. Analysis**

Here, Plaintiff alleges his due process rights were violated because he was held in administrative segregation on the basis of falsified documents. FAC at 19-20. However, Plaintiff's temporary placement in administrative segregation pending his ICC hearing does not implicate a liberty interest of "real substance" within the meaning of <u>Sandin</u>.

Plaintiff does not allege that the duration of his sentence was affected. Further, Plaintiff's placement in administrative segregation was temporary, not indefinite. <u>See Serrano v.</u>

10

1  Francis, 345 F.3d 1071, 1078 (9th Cir. 2003) (placement in
2  segregated housing in and of itself does not implicate a
3  protected liberty interest); May v. Baldwin, 109 F.3d 557, 565
4  (9th Cir. 1997) (mere placement in administrative segregation not
5  enough to state due process claim after Sandin); see, e.g.,
6  Sandin, 515 U.S. at 485-86 (inmate's thirty-day placement in
7  disciplinary segregation, where conditions mirrored conditions in
8  administrative segregation, not a deprivation of "real
9  substance"); Mujahid v. Meyer, 59 F.3d 931, 932 (9th Cir. 1995)
10 (under Sandin no liberty interest when inmate placed in
11 disciplinary segregation for fourteen days); cf. Wilkinson v.
12 Austin, 545 U.S. 209, 125 S. Ct. 2384, 2394-95, 162 L. Ed. 2d 174
13 (2005) (indefinite placement in a "supermax" facility, where
14 inmates are not eligible for parole consideration, imposes an
15 "atypical and significant hardship within the correctional
16 context").

   Without more, Plaintiff's temporary placement in administrative segregation pending an ICC hearing and transfer back to general population, does not establish a deprivation of "real substance" under Sandin. See Sandin, 515 U.S. at 477-487; Resnick, 213 F.3d 448-49. Therefore, Plaintiff fails to state a claim for violation of Due Process.

**C.  Plaintiff Fails to State an Equal Protection Claim**

   The FAC conclusorily mentions the terms equal protection, class of one theory, and discrimination. FAC at 10, 19. However, Plaintiff fails to allege facts showing defendants treated him differently from others similarly situated without a rational basis or discriminated against him based on his

membership in a protected class. See Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (*per curiam*) (standard for "class of one" equal protection claim); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (requirements for Section 1983 equal protection claim based on membership in protected class); Gallo v. Burson, 568 F. App'x 516, 517 (9th Cir. 2014) (affirming district court dismissal of inmate's equal protection claim).  In fact, Plaintiff has not even identified any similarly situated inmates who were treated differently from him. See FAC.  Therefore, Plaintiff fails to state an Equal Protection claim.

**D.   Plaintiff Fails to State a Conspiracy Claim**

   **1.   Legal Standard**

A conspiracy claim brought under section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).  See also Manago, 2012 WL 6628902, at *12 ("Plaintiff's bare, conclusory allegations that Defendants conspired to violate Plaintiff's constitutional rights will not suffice to give rise

to a conspiracy claim under section 1983.").

### 2. Analysis

Here, because Plaintiff failed to allege an actual deprivation of constitutional rights, he has failed to state a cause of action for conspiracy. Hart, 450 F.3d at 1071.

## IV.

## LEAVE TO FILE A SECOND AMENDED COMPLAINT

For the foregoing reasons, the FAC is subject to dismissal. As the court is unable to determine whether amendment would be futile, leave to amend is granted. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (*per curiam*).

Accordingly, **IT IS ORDERED THAT no later than October 1, 2015**:

1) **Plaintiff may file a Second Amended Complaint ("SAC") to attempt to cure the deficiencies with the FAC.** The Clerk is directed to provide Plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate Plaintiff's filing of a SAC if he elects to proceed with this action. Plaintiff is strongly encouraged to use that form.

2) If Plaintiff chooses to file a SAC, the SAC should bear the docket number assigned to this case, be labeled "Second Amended Complaint," and be complete in and of itself without reference to the FAC or any other pleading, attachment, or document.

Alternatively, Plaintiff may request a voluntary dismissal of this action without prejudice pursuant to Federal Rule of Civil Procedure 41(a). **A Notice of Dismissal Form is attached for Plaintiff's convenience.**

Because this will be Plaintiff's second opportunity to amend his complaint to rectify pleading deficiencies, the Court advises Plaintiff that it generally will not be well-disposed toward another dismissal with leave to amend if Plaintiff files a SAC that continues to include claims on which relief cannot be granted. "[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'" Ismail v. County of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012) (citations omitted); see also Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992). See, e.g., Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994) ("Kaplan has already amended the complaint twice . . . ."); Zavala v. Bartnik, 348 F. App'x 211, 213 (9th Cir. 2009) ("Dismissal with prejudice was proper because Zavala was given two prior opportunities to amend his complaint in order to correct the deficiencies identified by the district court but failed to do so."); Smith v. Solis, 331 F. App'x 482, 482–83 (9th Cir. 2009) ("The district court properly dismissed the action with prejudice because Smith's second amended complaint did not state a claim for deliberate indifference and Smith failed to correct the defects."). Thus, **if Plaintiff files a SAC with claims on which relief cannot be granted, the SAC will be dismissed without leave to amend and with prejudice.**

///
///
///
///
///

**Plaintiff is explicitly cautioned that failure to timely file a SAC, or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).**

DATED: September 10, 2015

HON. KENLY KIYA KATO
U.S. MAGISTRATE JUDGE